Marjorie WINTERS, Plaintiff and Respondent,

v.

CHARLES ANTHONY, INC., a Utah Corporation, Defendant and Appellant.

No. 15523.

Supreme Court of Utah.

Oct. 24, 1978.

Richard C. Landerman, Snow, Landerman & Rodgers, P. C., Salt Lake City, for defendant and appellant.

John Preston Creer, Brent Ward, Salt Lake City, for plaintiff and respondent.

ELLETT, Chief Justice:

Respondent was the owner of a bracelet that contained 63 emeralds and 54 pearls. She took the bracelet to appellant's jewelry store to have it remade into a pendent. The work was completed, but before respondent could reclaim the jewelry, it was either lost or stolen. Respondent brought suit to recover the value of the jewelry and the court, sitting without a jury, entered judgment in favor of respondent for the bracelet's appraised value of $8,180 plus costs and interest.

Appellant does not challenge its liability but appeals on the basis that the trial court's award is excessive and was not based on the proper standard. The argument presented is that the appraisal value cannot be used as a measure of damage. Appellant states that the proper measure is market value which is the same as replacement value and that the market value in the Salt Lake area is less than the appraisal value. It should be stated at the outset that while market value and replacement cost may be the same dollar amount in a given fact situation, they are not entirely synonymous concepts.

■■■ The general rule is that damages awarded for personal property that is taken or destroyed are based on the item's market value at the time of the taking or destruction.[1] Ordinarily, market value is defined as the price for which an article is bought and sold and for which there exists a demand in the market place, and the legal definition of that price is retail, not wholesale.[2] If, however, there is no demand for the item, the recovery is based on actual value, or in the case of unique chattels, value to the owner.[3] The rule is a flexible one that can be modified in the interest of fairness.

Appellant relies on the testimony of one of its employees as proof that the retail jewelry market would command a price of not more than $5,000 for the pendant. Respondent offered expert testimony by the appraiser who had previously examined the bracelet and who testified that the retail value was $8,180.

The appraiser, Mr. Vanderveer, was regularly used by the appellant in its own jewelry business, and his qualification as an expert in precious stones was not challenged by the appellant. He testified he had been certified as a gem expert and that he was a dealer in emeralds. His testimony was to the effect that the customary way to appraise a gem is for replacement value, not wholesale value, and that the ordinary way to arrive at that figure is by "keystoning." Keystoning means that the gem is first valued at wholesale and that value is then doubled to arrive at retail value. The witness further testified that keystoning was the generally accepted method of valuation in the jewelry industry.

Appellant's employee, Mr. Nash, on the other hand, testified that he was not certified as an expert in gems and that his knowledge was limited only to diamonds. He admitted he had no expertise in emeralds and that appraisals for all non-diamond pieces were sent to Mr. Vanderveer. He further testified that he had made no tests himself, that he made no independent appraisal, and that because he relied on Mr. Vanderveer's figures, he had requested the appraisal of the bracelet since it appeared to have substantial value.

Mr. Nash was given a hypothetical question as to how he would value a ring, and he determined the value by using the keystone method; yet, when asked how the emeralds in question would be valued, he denied that keystoning would be applied. He also did not know whether or not the other jewelers in the area used keystoning but merely stated that he "guessed" other dealers were

1. *Park v. Moorman Mfg. Co.*, 121 Utah 339, 241 P.2d 914 (1952); 22 Am.Jur.2d, Damages, § 145.

2. 22 Am.Jur.2d, Damages, § 146.

3. Id.

"probably not" selling at keystone. He equivocated when asked what it would cost to make a similar pendent and answered by saying, "I feel we could compose a piece for $3,000—$4,000; I would probably ask not more than $5,000."

Mr. Nash attempted to justify his lower estimate as to the retail value of the jewelry by claiming that the Salt Lake market would bear no more than a $5,000 price. This statement was uncorroborated and the witness had no expertise or other knowledge on which to base his assumption. Further, respondent is not restricted merely to the local market place but may draw on any market open to her at the time of loss. And if there is no local market value, the value will be fixed at the nearest market, notwithstanding the fact that the owner intended to keep the article and could not have replaced it except by purchasing a similar one.[4]

■ Mr. Vanderveer and Mr. Nash were the only witnesses called in this case. The trier of fact had to believe one or the other; and the court placed more weight on the testimony of a certified expert in emeralds than it did on the unqualified, self-serving, and ambiguous statements of appellant's employee. We have stated many times that the trial court's finding will not be disturbed on appeal unless they are clearly against the weight of the evidence.[5] We cannot say the evidence was insufficient under these circumstances.

■ We agree with respondent that the only real issue here is whether or not the damage award was excessive. Appellant argues that awarding the appraisal value constitutes a windfall because the jewelry was a gift. There is no merit to this contention.

The appraisal was based on the value of each individual stone with no consideration given to any aesthetic or sentimental value.

The testimony given by the appraiser was that there is no other way of establishing the value of a piece of jewelry except by appraising it; and that in the industry, appraisal value and market value are the same, notwithstanding the fact that a dealer may choose to sell the item above or below that value. Mr. Nash also conceded that the appraisal value represents the average of what it would cost to replace the piece of jewelry and that the appraiser, Mr. Vanderveer, was one customarily used by the appellant because of his expertise in the field.

■ Replacement value is the amount it would cost *respondent* to replace the property, not the wholesale cost to the jeweler to manufacture a similar one. It is well settled that the fundamental principle of damages for the loss of bailed property "is to restore the injured party to the position he would have been in had it not been for the wrong of the other party."[6] Regardless of how respondent acquired the jewelry, she was unquestionably the owner at the time of the loss and was damaged in the full amount of the market value of the jewelry at that time. The trial court's award was consistent with the proof of market value and does not amount to a windfall profit to the respondent.

Since respondent would have to pay the appraised value to replace the property (allowing for a 25% margin of error to which both parties agree), and it was established by competent evidence that the appraisal value and the market value of precious stones are the same, we find no error in the trial court's findings nor do we find that the award was excessive.

The judgment is affirmed with costs to respondent.

CROCKETT, WILKINS, MAUGHAN and HALL, JJ., concur.

4. 22 Am.Jur.2d, Damages, § 147.

5. *Brown v. Board of Education*, Utah, 560 P.2d 1129, 1131 (1977); *Hanover Ltd. v. Fields*, Utah, 568 P.2d 751, 753 (1977); *Barlow Uphol-stery & Furniture Co. v. Emmel*, Utah, 533 P.2d 900, 902 (1975); *Hardy v. Hendrickson*, 27 Utah 2d 251, 495 P.2d 28, 29 (1972).

6. *Park v. Moorman*, supra 241 P.2d at 920.