2006 UT App 445

STATE of Utah, Plaintiff and Appellee,

v.

William Thomas GREENE, Defendant and Appellant.

No. 20050891–CA.

Court of Appeals of Utah.

Nov. 2, 2006.

Josie E. Brumfield and Michael Misner, Salt Lake Legal Defender Association, Salt Lake City, for Appellant.

Mark L. Shurtleff, Attorney General, and Jeanne B. Inouye, Assistant Attorney General, Salt Lake City, for Appellee.

Before Judges BENCH, GREENWOOD, and DAVIS.

## OPINION

DAVIS, Judge:

¶ 1 Defendant William Thomas Greene appeals his conviction of theft by deception, a third degree felony. *See* Utah Code Ann. §§ 76-6-405, -412(1)(b)(i) (2003). We affirm.

## BACKGROUND

¶2 On the morning of March 22, 2004, Defendant brought approximately thirty pieces of stainless steel pipe to the Lucency Corporation scrap yard (Lucency) to sell as scrap metal. The pipe had recently been stolen from an outdoor storage area at a business known as Water and Power Technologies. Defendant told Lucency's owner, Billy Cheung, that he "bought the pipe from a guy." Cheung agreed to purchase the pipe as scrap for a price of forty-five cents per pound. Cheung weighed the pipe and issued Defendant a check for the corresponding amount, which came to $1080 (the check).[1]

¶3 Defendant then went to a bank and attempted to cash the check. The bank informed Defendant that there were insufficient funds in Lucency's account to cover the check, and refused to honor it.[2] Defendant never received any payment for the pipe.

¶4 Meanwhile, Sanford Osborn, an employee of Water and Power Technologies, began calling local scrap yards in an effort to locate the stolen pipe. When Osborn contacted Lucency, Cheung informed him that Defendant had recently brought similar pipe to Lucency. Later that morning, Osborn went to Lucency and identified the pipe as that which had been stolen from Water and Power Technologies. After learning that the pipe was stolen, Cheung instructed his business partner to place a stop payment on the check. Cheung and Osborn later reported Defendant's activities to the police, and Defendant was arrested.

¶5 The State charged Defendant with one count of theft by receiving stolen property, see id. § 76-6-408 (2003), and one count of theft by deception, see id. § 76-6-405. Both charges were tried by a jury. Respecting the theft by deception charge, defense counsel chose not to request a jury instruction on the lesser included offense of attempted theft by deception. Nor did defense counsel object to the jury instructions. Instead, defense counsel elected to go "all or nothing" and based Defendant's case entirely on the value of the check, arguing that it had no value to Defendant due to the insufficient funds in Lucency's account. The jury did not agree and convicted Defendant of theft by deception, which was graded as a third degree felony because the value of the check was over $1000. See id. § 76-6-412(1)(b)(i). The jury acquitted Defendant of receiving stolen property. Defendant then moved to set aside the verdict, which motion was denied. Defendant timely appealed.

## ISSUES AND STANDARDS OF REVIEW

¶6 Defendant argues that the State failed to prove that he obtained property worth over $1000, and therefore, he cannot be convicted of a third degree felony. See id. (grading theft as third degree felony if property value "exceeds $1,000 but is less than $5,000"). According to Defendant, the check had no value because the insufficient funds in Lucency's account prevented him from cashing the check. In addition, Defendant claims that because the check had no value, the most serious applicable crime is the lesser included offense of attempted theft by deception.[3]

---

1. The record is unclear about whether the check was written for $1040 or $1080. For purposes of this appeal, we reference the trial court's findings of fact and use $1080.

2. Defendant also tried to cash the check two days later, but failed because Lucency had placed a stop payment on the check.

3. The record makes clear that Defendant strategically chose not to request a lesser included jury instruction at trial, and now urges on appeal that the most serious crime he can properly be convicted of is attempted theft by deception. Our supreme court requires preservation of sufficiency of evidence claims to "prevent a defendant from deliberately foregoing relief below based on the sufficiency of the evidence, hoping that a remediable evidentiary defect might not be perceived and corrected, thus strategically facilitating the defendant's chance for a reversal on appeal." *State v. Holgate*, 2000 UT 74, 10 P.3d 346. Defendant's "all or nothing" strategy may, therefore, constitute invited error. However, we do not determine whether the invited error doctrine applies to Defendant's insufficient evidence claim here because the issue was not fully briefed by the parties nor urged by the State on appeal. See *State v. Geukgeuzian*, 2004 UT 16, ¶9, 86 P.3d 742 (holding that under invited error a party "cannot take advantage of an error committed at trial when that party led the trial court into committing the error" (quotations and citation omitted)); *State v. Anderson*, 929 P.2d 1107, 1109 (Utah 1996) ("[D]efendant cannot lead the court into error by failing to object and

¶7 "[I]n considering an insufficiency-of-evidence claim, we review the evidence and all inferences drawn therefrom in a light most favorable to the verdict." *State v. Honie,* 2002 UT 4, ¶44, 57 P.3d 977. "We reverse a jury verdict only when the evidence, so viewed, is sufficiently inconclusive or inherently improbable such that reasonable minds must have entertained a reasonable doubt that the defendant committed the crime for which he or she was convicted." *State v. Dunn,* 850 P.2d 1201, 1212 (Utah 1993). Upon review, "we determine only whether sufficient competent evidence was admitted to satisfy each element of the charge[ and] whether sufficient evidence was before the jury to enable it to find, beyond a reasonable doubt, that the defendant committed the crime." *Honie,* 2002 UT 4 at ¶44, 57 P.3d 977.

### ANALYSIS

¶8 "To affirm the jury's verdict, we must be sure the State has introduced evidence sufficient to support all elements of the charged crime." *State v. Smith,* 927 P.2d 649, 651 (Utah Ct.App.1996). The only element of Defendant's conviction that he challenges on appeal is the value of the property he obtained by deception. To constitute a third degree felony, the State must prove that the value of the property obtained by Defendant "exceeds $1,000 but is less than $5,000." Utah Code Ann. § 76–6–412(1)(b)(i). We believe that the State has proven that the check obtained by Defendant was worth the requisite amount and therefore affirm.

¶9 Determining the value of a check obtained by deception that is later dishonored due to insufficient funds is a question of first impression in Utah. Our prior case law provides guidance by stating that "the face value of [a] check[ ] . . . is prima facie evidence of the value that determines the degree and penalty relevant in a theft case." *State v. Pacheco,* 636 P.2d 489, 490 (Utah

1981) (per curiam). In *Pacheco,* a jury convicted the defendant of theft after he took two unendorsed checks from a tire store where he had asked for a job. During trial, a bank employee testified that the checks were worthless and had no market value unless properly endorsed. *See id.* On appeal, the defendant argued that the trial court should have reduced the charges against him because the checks were actually worthless. *See id.* The Utah Supreme Court rejected the defendant's argument that the checks were worthless, *see id.* at 490–91, and held that

> "[t]he prima facie value of a check is its *face value.* This rule comports with the general rule that value in a theft case is market value. . . . Where a check is the thing to be valued, the willing buyer is normally the draw[ee][ [4]] bank [who] will pay the face amount of the instrument, or the drawer will make good the instrument. . . . The value of the thing lost is not limited to what the thief could realize on the instrument."

*Id.* at 491 (fourth alteration in original) (quoting *People v. Marques,* 184 Colo. 262, 520 P.2d 113, 116–17 (1974)).

¶10 Although there is a presumption that the value of a check is its face value, *see id.,* this presumption may be overcome with evidence showing that the market value of the check is different than the face value of the check. *See id.* Other jurisdictions have stated that certain facts may rebut the prima facie evidence that the face value of a check is its actual value. *See State v. Harris,* 708 So.2d 387, 389 (La.1998) ("[T]he value of a check, in the absence of proof to show a lesser value, is . . . the check's face value." (quotations and citation omitted)); *Simmons v. State,* 109 S.W.3d 469, 475 (Tex.Crim.App. 2003) (holding that while "the face amount of a check is presumptive evidence of its value," there are exceptions to the general rule "in which evidence rebuts that presumption and shows . . . that the drawer does not have

---

then later, when he is displeased with the verdict, profit by his actions." (quotations and citation omitted)).

4. *State v. Pacheco,* 636 P.2d 489 (Utah 1981), misquotes *People v. Marques,* 184 Colo. 262, 520 P.2d 113, 116 (1974), so we alter the word "drawer" to "drawee" to reflect the language used by the Colorado Supreme Court.

sufficient funds to cover the check[ ] or that there is some other fact which negates, lessens, or perhaps even increases the face value of the check"). Here, Defendant contends that he effectively rebutted the *Pacheco* presumption because he "established that the market value of the check was worthless when he presented it to the 'willing buyer' . . . and it was dishonored due to insufficient funds." We disagree.

¶ 11 In the absence of statutes providing otherwise, we measure the value of property taken in theft cases by looking at such property's "fair market value at the time and place where the alleged crime was committed." *State v. Logan,* 563 P.2d 811, 813 (Utah 1977); *see also State v. Lyman,* 966 P.2d 278, 283 (Utah Ct.App.1998). Fair market value is measured by what the "owner [of the property] could expect to receive, and the amount a willing buyer would pay to the true owner for the stolen item." *Logan,* 563 P.2d at 813 (footnote omitted). We hold that when a defendant seeks to overcome the presumption that the face value of a check is the check's actual fair market value, the defendant must present evidence of the check's differing actual value at the *"time and place* where the alleged crime was committed." [5] *Id.* (emphasis added); *see also Forrest v. State,* 721 A.2d 1271, 1280 (Del.1999) ("The value of the property is determined at the *time and place* of the crime." (emphasis added) (quotations and citation omitted)); *Harris,* 708 So.2d at 389 ("[T]he value of a check, in the absence of proof to show a lesser value, is measured by what the owner of the

check could expect to receive for the check *at the time of the theft,* i.e. the check's face value." (emphasis added) (quotations and citation omitted)); *Simmons,* 109 S.W.3d at 478 (stating that the value of fraudulently obtained checks should be measured when "[the defendant] accepted the checks in exchange for his [fraudulent insurance] claims. And that was *the moment at which the alleged theft occurred."* (emphasis added)). While Defendant has shown that his attempt to cash the check approximately one half hour after he received it from Cheung was thwarted due to insufficient funds, he has not shown that the check had no value at the moment he received it. Defendant did not put on any evidence that there were insufficient funds in Lucency's account at the moment Cheung handed him the check. As such, Defendant failed to rebut the *Pacheco* presumption.[6]

¶ 12 The State provides additional support for Defendant's failure to rebut the *Pacheco* presumption by arguing that "at the time the crime was committed, Cheung, acting for Lucency, could have expected that a willing buyer, the drawee bank, would pay and that [D]efendant would receive $1080 for it." [7] The expectation of the parties during the exchange of property is relevant, but not dispositive, to determining the value of a check obtained by deception. Indeed, a party's willingness to exchange its property for a check demonstrates the anticipated value of the check. *See Simmons,* 109 S.W.3d at 478 (stating that defendant's acceptance of

---

5. We note that the presumption protects the State from having to initially establish that there were sufficient funds in the account or that the check would have been honored if cashed by Defendant at the time the crime was committed. *See Simmons v. State,* 109 S.W.3d 469, 478 (Tex. Crim.App.2003). Furthermore, we reject Defendant's argument that the State had an affirmative duty to establish that Lucency was liable on the check despite the insufficient funds. *See State v. Burks,* 188 N.J.Super. 55, 455 A.2d 1148, 1150–51 (App.Div.1983). Such evidence is needed only when a defendant rebuts the *Pacheco* presumption. *See Pacheco,* 636 P.2d at 491.

6. We need not elaborate on the type of evidence needed to rebut the *Pacheco* presumption. We determine that the presumption must be rebutted with evidence that, at the time and place of the

commission of the crime, the check was worth more or less than its face value, *see State v. Logan,* 563 P.2d 811, 813 (Utah 1977), and Defendant has not proffered any evidence of insufficient funds in Lucency's bank account at that moment.

7. The State urges us to apply Utah civil law in determining the value of the check. Under such an approach, the State argues that the check was not worthless despite insufficient funds in Lucency's account because "[t]he drawer of a check is liable for the amount of the check regardless of whether there are sufficient funds in the account to pay for it." *See* Utah Code Ann. § 70A–3–414 (2001). However, we need not address this issue because Defendant has failed to rebut the presumption under *Pacheco.*

checks in exchange for fraudulent insurance claims sent the "unspoken message ... that these two checks had the equivalent value of cash in payment of his asserted claims").

¶ 13 Here, the record shows that Cheung expected the check to clear and that he was surprised when Defendant called to tell him that there were insufficient funds in the Lucency account. Thus, from the perspective of the victim (Cheung acting for Lucency), the check was worth $1080 at the time and place of the theft by deception. The record likewise indicates that Defendant anticipated the check to be worth its face value because of his willingness to exchange the stolen pipe, worth over $1000 as scrap metal, for the check. As such, at the time of the commission of the crime each party expected the check to be worth $1080, its face value.

¶ 14 In short, we determine that Defendant has not rebutted the presumption that the face value of the check constitutes the actual value of the property he obtained through theft by deception. Our case law makes clear that, for the purposes of grading theft cases, we value stolen property by determining its fair market value at the time and place the crime occurred. *See Logan,* 563 P.2d at 813. With the approval of both parties, the trial court instructed the jury that "[w]hen the value of property must be determined, the measure of the value is its fair market value at the time and place of the theft." This instruction clearly comports with *Logan. See id.* Based on the evidence in the record, we hold that the jury's action, when viewed "in a light most favorable to the verdict," *State v. Honie,* 2002 UT 4, ¶ 44, 57 P.3d 977, was not so "inherently improbable ... that reasonable minds must have entertained a reasonable doubt that the defendant committed the crime for which he or she was convicted," *State v. Dunn,* 850 P.2d 1201, 1212 (Utah 1993). The jury reasonably concluded that the face value of the check consti-

tuted its actual value at the time and place that Defendant committed the crime.[8]

## CONCLUSION

¶ 15 Defendant failed to rebut the presumption under *Pacheco* that the face value of a wrongfully obtained check is the actual value of the check for the purposes of grading theft offenses.[9] Based on the lack of evidence that the check had no value at the moment the crime was committed, as well as our great deference when reviewing jury verdicts, *see id.,* we hold that the State has proven each element of Defendant's conviction. Therefore, we affirm Defendant's conviction of theft by deception of property valued at over $1000, but less than $5000. *See* Utah Code Ann. §§ 76-6-405, –412(1)(b)(i).

¶ 16 Affirmed.

¶ 17 I CONCUR: RUSSELL W. BENCH, Presiding Judge.

GREENWOOD, Associate Presiding Judge (concurring in the result):

¶ 18 I concur in both the rationale and the result reached by the majority. I respectfully submit, however, that the inclusion of footnote 3 is unnecessary and inappropriate. The footnote states that Defendant's "strategy may ... constitute invited error." As further noted, the State did not argue invited error in its briefing. This court requested that counsel for both the State and Defendant provide supplemental briefing on the applicability and effect of the doctrine of invited error. Other than the State citing cases involving invited error, both parties declined to urge its application. In light of that declination, I believe we should be silent. Moreover, I am not persuaded that the doctrine is, indeed, applicable under the facts of this case. In the two cases cited in the majority footnote, *State v. Geukgeuzian,* 2004 UT 16, 86 P.3d 742, and *State v. Anderson,*

8. Because we are concerned only with the value of the check at the time the crime occurred, the evidence that Cheung offered to exchange the dishonored check for a smaller check and cash is irrelevant. Similarly, the fact that Lucency later put a stop payment order on the check does not alter the value of the check when Defendant committed the theft by deception.

9. Since we conclude that Defendant failed to rebut the *Pacheco* presumption, Defendant's argument that he can only be convicted of attempted theft by deception necessarily fails.

929 P.2d 1107 (Utah 1996), the defendants claimed the trial courts had erred in their instructions to the jury. *See Geukgeuzian,* 2004 UT 16 at ¶ 4, 86 P.3d 742; *Anderson,* 929 P.2d at 1108. In both cases, the supreme court held invited error occurred when the defendants' counsel failed to object to the instructions and/or explicitly approved them and then appealed the correctness of those same instructions. *See Geukgeuzian,* 2004 UT 16 at ¶ 12, 86 P.3d 742; *Anderson,* 929 P.2d at 1109. In this case, Defendant does not claim error based on the trial court's inadequate instructions. To the contrary, Defendant assumes the correctness of the instructions, and argues there was insufficient evidence to establish one of the elements of the crime. I would not want to be bound by my scant analysis based on only two cases, but prefer to wait until the issue is properly raised and briefed in a future case in order to have the benefit of the parties' analysis and arguments.