**2017 UT App 170**

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
KRISTOPHER ENGLAND,
Appellant.

Opinion
No. 20150218-CA
Filed September 8, 2017

Third District Court, West Jordan Department
The Honorable Charlene Barlow
No. 131401508

Nathalie S. Skibine and Wesley J. Howard, Attorneys
for Appellant

Sean D. Reyes and William M. Hains, Attorneys
for Appellee

JUDGE JILL M. POHLMAN authored this Opinion, in which JUDGES
GREGORY K. ORME and DAVID N. MORTENSEN concurred.

POHLMAN, Judge:

¶1     Kristopher England appeals the district court's calculation of restitution in connection with his conviction for theft. We vacate the restitution order and remand for further proceedings.

## BACKGROUND

¶2     Sometime before 2012, Victim bought a 1995 Eagle Talon for $2,500 to customize and give to his son when he turned sixteen. Over the course of the next two years, Victim periodically would leave the car at an auto shop so that Mechanic could make requested modifications. At some point, the timing belt on the car failed, and Mechanic removed the

engine and sent it to a machinist to be rebuilt. During the year and a half that followed, the Talon remained at the auto shop, and Mechanic would work on it as Victim's invoices were paid. By July 2013, Victim had paid Mechanic approximately $9,000 for modifications, only some of which had been installed.

¶3 England assumed ownership of the auto shop before the car's modifications were complete. In July 2013, without Victim's consent, England sold the Talon to a salvage yard for $300. At the time of the sale, the car had no engine; the engine had not yet returned from the machine shop to be reinstalled.[1]

¶4 The State charged England with theft and theft by deception for selling the Talon without Victim's permission. England pleaded guilty to the theft charge, and the theft by deception charge was dismissed. As part of his sentence, the district court ordered England to pay Victim restitution. The State moved for an order of restitution in the amount of $13,402.76. England objected to the amount, and a hearing was set.

¶5 During the two-day hearing, the parties offered competing valuations of the Talon. Early in the proceeding, the prosecutor explained that the State was seeking "not the market value, but . . . the value of the car, plus a lot of these items," referring to the modifications installed by Mechanic. Victim testified that he paid $2,500 for the Talon; Mechanic estimated the car's Kelley Blue Book value in 2011 to be "somewhere in [the range of] at least $5,000 to 3,500"; and the State introduced evidence based on the Kelley Blue Book that the 2014 value of a 1995 Eagle Talon in very good condition (but without Victim's modifications) was $2,147. The State also introduced evidence

---

1. Mechanic testified that the machine shop returned the Talon's engine to him after he paid for the work the machinist had done. At the time of the restitution hearing, the engine was at Mechanic's house.

identifying the modifications that were installed on the Talon and how much Victim paid for each one.[2]

¶6      England, in contrast, argued for a fair market valuation of the Talon in the condition it was in at the time he sold it to the salvage yard. England testified that he believed $300 was a fair valuation of the car, stating, "For the value of that car, for a frame of a . . . [1995] Eagle Talon with no motor, no driveline, no interior . . . $300 is about all you're going to get for that." England also asked Mechanic to estimate what he thought he could have sold the car for with its modifications, but without its engine, if Victim had come to him and said, "I don't want it anymore, it's not worth the hassle anymore. You take it and sell it for whatever you can get for it." Mechanic answered, "I would believe with all my work, labor, and everything and all the modifications, that car would have had to have been at least worth $3,500."

¶7      During closing argument, the State retreated from its initial request for $13,402.76 in restitution and conceded that Victim's damages were lower. Relying on Mechanic's testimony, the State asked the court to award restitution in the amount of $3,500, plus the amounts paid for the installed modifications. The State argued that $3,500 represented the "fair market value" of the car,[3] and that because Victim paid for but "never had the benefit of" the installed modifications, the restitution award should include "the replacement cost for those." The State also

---

2. Mechanic testified that Victim paid $5,777.87 for the installed modifications and approximately $3,000 for modifications that were not yet installed at the time the Talon was sold.

3. It is unclear from the State's argument whether the State's request was based on the low end of Mechanic's estimate of the Talon's blue book value in 2011 (before modification) or Mechanic's estimate of what he could have sold the Talon for with its modifications but without its engine.

conceded that $2,500 would be an appropriate starting point for the valuation when asked by the court if it would be appropriate to calculate restitution by adding the cost of the installed improvements to the car's purchase price.[4] England disagreed with the State's position and argued that Victim was entitled only to $300—the amount paid by the salvage yard.

¶8 The district court ordered England to pay $8,277.87 in restitution. The district court arrived at this figure by adding together the Talon's $2,500 purchase price and the $5,777.87 Victim paid Mechanic for the installed modifications. In setting the award, the district court did not include any compensation for modifications that Victim had paid for but were not installed, stating those parts "may be available for sale to mitigate damages." England appeals.

ISSUE AND STANDARD OF REVIEW

¶9 England challenges the district court's restitution order, contending that the court "erred when it ordered restitution in an amount that included the purchase price of a vehicle that had been stripped of its engine . . . as well as the purchase price of improvement projects." "We will not disturb a trial court's restitution order unless it exceeds that prescribed by law or [the trial court] otherwise abused its discretion. A trial court will be deemed to have abused its discretion only if no reasonable [person] would take the view adopted by the trial court." *State v.*

---

4. The State originally sought restitution for modifications Victim paid for but were not installed. England objected, arguing that he was convicted only of stealing the Talon and should not be held responsible for items that were not attached. The State conceded the point, stating "I think we are limited to what was on the car in terms of the restitution," and the State did not include any uninstalled items in its revised request.

*Ludlow*, 2015 UT App 146, ¶ 5, 353 P.3d 179 (alterations in original) (citation and internal quotation marks omitted).


ANALYSIS

¶10 England contends the district court "erred when it awarded restitution based on the purchase price of the car and the purchase price of each installed project." He asserts that the "best figure for the fair market value of the property stolen, a 1995 Eagle Talon without an engine, was $300" because that "was the amount a willing buyer actually paid for the stolen item." In the alternative, England asserts that restitution should not exceed $3,500, which "was the amount [Mechanic] testified the item was worth at the time it was sold" and represents "the price a willing buyer would have paid for the car without an engine but with the installed projects." As another alternative, England argues that because the car had no engine when it was sold to the salvage yard, the car's $2,500 purchase price "was not an appropriate baseline" for its value and suggests that restitution could have equaled "the awarded amount minus the car's purchase price."

¶11 The State responds that "using the original price the victim paid for the Talon plus the amount he paid for modifications made the victim whole for the economic injury he suffered from England's criminal act." The State further defends the district court's ruling by arguing that the restitution award should be affirmed because the court appropriately calculated restitution based on the car's "value to the owner." *See Winters v. Charles Anthony, Inc.*, 586 P.2d 453, 454 (Utah 1978) ("If . . . there is no demand for the item, the recovery is based on actual value, or in the case of unique chattels, value to the owner."). The State's argument is based on its assertions that this case "involves unique property" and that "there likely would have been no willing buyer for the car, making retail price an unavailable measure of the victim's loss."

¶12    The Crime Victims Restitution Act provides, "When a defendant is convicted of criminal activity that has resulted in pecuniary damages, in addition to any other sentence it may impose, the court shall order that the defendant make restitution to the victims of crime . . . ." Utah Code Ann. § 77-38a-302(1) (LexisNexis Supp. 2016). "Pecuniary damages" are "all demonstrable economic injury, . . . including those which a person could recover in a civil action arising out of the facts or events constituting the defendant's criminal activities and includes the fair market value of property taken, destroyed, broken, or otherwise harmed." *Id.* § 77-38a-102(6). "Criminal activities" is defined as "any offense of which the defendant is convicted," or "any other criminal conduct for which the defendant admits responsibility to the sentencing court." *Id.* § 77-38a-102(2).[5]

¶13    The "well-settled remedial purpose of our restitution statute is to compensate victims for the harm caused by a defendant and . . . to spare victims the time, expense, and emotional difficulties of separate civil litigation to recover their damages from the defendant." *State v. Corbitt*, 2003 UT App 417, ¶ 14, 82 P.3d 211 (omission in original) (citation and internal quotation marks omitted). In most cases, fair market value will be the measure most apt to serve this purpose. *See Winters*, 586

---

5. The Crime Victims Restitution Act has "a clear directive that district courts are to make two separate restitution determinations, one for complete restitution and a second for court-ordered restitution." *State v. Laycock*, 2009 UT 53, ¶ 20, 214 P.3d 104; *see also* Utah Code Ann. § 77-38a-302(2) (LexisNexis Supp. 2016). Since this case was briefed and argued, the Utah Supreme Court has reiterated that it is error for a district court to "merge" the two restitution determinations into one order. *State v. Mooers*, 2017 UT 36, ¶ 12. The district court made no distinction between the two required restitution determinations in this case, but because England has not raised this issue as a ground for reversal, we do not address it further.

P.2d at 454 ("The general rule is that damages awarded for personal property that is taken or destroyed are based on the item's market value at the time of the taking or destruction.").[6] "Fair market value is measured by what the owner [of the property] could expect to receive, and the amount a willing buyer would pay to the true owner for the stolen item." *State v. Ludlow*, 2015 UT App 146, ¶ 6, 353 P.3d 179 (alteration in original) (citation and internal quotation marks omitted); *see also Winters*, 586 P.2d at 454 ("Ordinarily, market value is defined as the price for which an article is bought and sold and for which there exists a demand in the market place . . . .").

¶14 While fair market value is a generally reliable measure of property value, we have recognized that there are some circumstances in which other measures may more accurately serve the statutory purpose of compensating a crime victim for the full amount of his loss. *See, e.g.*, *Ludlow*, 2015 UT App 146, ¶¶ 7–8. For example, in *Ludlow*, we concluded that purchase price may "be a more equitable way to valuate a victim's loss of items for which there is little or no market." *Id.* ¶ 8 (indicating that a restitution award based on purchase price may be appropriate for personal clothing). And, in *Corbitt*, we affirmed an order of restitution based on the purchase price of a truck where the trial court found that the purchase price was a more accurate reflection of its fair market value than the insurance company's valuation given the short period of time between the purchase and the theft. 2003 UT App 417, ¶ 16. Thus, "the measure of damages is flexible, allowing trial courts to fashion an equitable award to the victim." *Id.* ¶ 14; *see also* 22 Am. Jur. 2d

---

6. "Cases [like *Winters*] addressing damages in the context of civil conversion actions are relevant to our analysis because pecuniary damages in the restitution context are those damages 'which a person could recover in a civil action arising out of the facts or events constituting the defendant's criminal activities.'" *State v. Ludlow*, 2015 UT App 146, ¶ 6 n.3, 353 P.3d 179 (quoting Utah Code Ann. § 77-38a-102(6) (LexisNexis 2012)).

*Damages* § 293 (2013) ("[S]ince the market-value test is, at best, a means of determining the loss suffered, it may be discarded if a more accurate test is applicable.").

¶15   This flexibility, however, is not without its limits. In *Ludlow*, we concluded that the district court exceeded its discretion by using purchase price to calculate a damages award for stolen "electronics of various ages that would clearly have a market value." 2015 UT App 146, ¶ 10. And we have cautioned that in fashioning an award, courts should not use restitution "to grant a windfall to the victim." *State v. Irwin*, 2016 UT App 144, ¶ 9, 379 P.3d 68. Rather, restitution should be limited "to that amount which is necessary to compensate a victim for losses caused by the defendant." *Monson v. Carver*, 928 P.2d 1017, 1027 (Utah 1996).

¶16   Here, the district court used the purchase price to calculate restitution. The court awarded $2,500 based on the amount Victim paid to buy the 1995 Talon, plus $5,777.87 for the amount Victim paid for the installed modifications. England argues that the district court exceeded its discretion when it failed to limit its award to the car's fair market value measured by "what the owner [of the property] could expect to receive, and the amount a willing buyer would pay to the true owner for [the car]." *See Ludlow*, 2015 UT App 146, ¶ 6 (first alteration in original) (citation and internal quotation marks omitted). England states that the court should have determined that the fair market value of the Talon was $300 because that "was the amount a willing buyer actually paid for the stolen item." We disagree.

¶17   While it is true that England sold the Talon to a salvage yard for $300, the district court did not exceed its discretion by rejecting this valuation as the most accurate measure of Victim's loss. After all, the transaction with the salvage yard does not reflect "the amount a willing buyer would pay to the *true owner* for the stolen [property]." *See State v. Greene*, 2006 UT App 445, ¶ 11, 147 P.3d 957 (emphasis added) (citation and internal quotation marks omitted); *see also* 22 Am. Jur. 2d *Damages* § 293

(2013) ("Market value . . . is ordinarily best established by sales in the ordinary course of business. It is the price a willing seller would accept from a willing buyer." (footnote omitted)). England instructed his employee to "get rid of [Victim's] car" and to "take it to a place where [they] didn't need a title." Given the lack of title and England's desire to rid himself of the car, the salvage yard's $300 purchase price did not fairly represent what Victim—the "true owner"—would have accepted for the car. *See Greene*, 2006 UT App 445, ¶ 11 (citation and internal quotation marks omitted); *cf. Smith v. Mine & Smelter Supply Co.*, 88 P. 683, 685–86 (Utah 1907) (rejecting market value as the most appropriate valuation of loss where the market was a secondhand store and where persons selling in a secondhand store are compelled to sell). This is particularly true given that at the time of the theft, Victim had invested at least two years and thousands of dollars to modify a car that he never got to use. It is unrealistic to expect that Victim would have willingly sold the car to anyone in July 2013 for $300 after he had invested many multiples of that amount to modify it to his personal specifications.

¶18 The district court also acted within its discretion in rejecting Mechanic's $3,500 valuation as the most accurate valuation of Victim's loss. Mechanic was asked to guess at the value he thought he could fetch for the Talon if Victim had hypothetically abandoned it and told Mechanic to "sell it for whatever you can get for it." This hypothetical does not attempt to arrive at a fair market value between a willing buyer and a true owner. Rather, it imagines a situation where the car was abandoned and the seller was instructed to sell it for "whatever [he could] get." This court has previously held that "'the price at which someone would sell under urgent necessity' is not an appropriate measure of fair market value." *State v. Ludlow*, 2015 UT App 146, ¶ 7, 353 P.3d 179 (quoting *State v. Gorlick*, 605 P.2d 761, 762 (Utah 1979)). Similarly, the price at which a possessor might sell abandoned property to simply get "whatever [he could]" out of it may not accurately value a victim's loss. *Cf. Smith*, 88 P. at 686 (recognizing that the amount the plaintiff

could receive if certain items were "piled up in her dooryard or house" "for disposal" may not accurately reflect their actual value).

¶19    While we conclude that the district court did not exceed its discretion in rejecting England's proposed fair market valuations as accurate reflections of Victim's loss, we still must decide whether the district court acted within its discretion when it awarded Victim the purchase price of the car, plus the amounts paid for the installed modifications. We conclude that the district court acted within its discretion in awarding restitution based on the value of the Talon in addition to the cost of the installed modifications but that it was error for the court to award the car's full purchase price without accounting for the missing engine.

¶20    The State contends that because the Talon is "unique" and "there is likely little or no market" for the car, the district court acted within its discretion in using purchase price to measure Victim's loss. England contends that the State's argument was not made to the district court and there is a lack of evidence in the record to affirm on this basis. England is correct that the State did not use the word "unique" to describe the Talon in arguing for restitution. But the State did ask for something more than ordinary fair market value based on the unusual circumstances of this case. The State asked the district court to award the fair market value of the Talon, plus the cost of the improvements, arguing that because Victim had paid for but "never had the benefit of" the installed modifications, the restitution should include the cost to replace them.

¶21    As demonstrated above, purchase price may, in some circumstances, be a more accurate reflection of an item's value than other valuations. *See supra* ¶ 14. The district court did not abuse its discretion in concluding that this was a circumstance where other measures of value more accurately served the statutory purpose of compensating a crime victim for the full amount of his loss. Victim spent over two years and approximately $9,000 to customize the car to give to his son and,

at the time the car was stolen, it was a work in progress. There was no suggestion from England that the amounts paid for the installed modifications exceeded their fair market value, and by selling the car to the salvage yard before the work was complete—before Victim had an opportunity to drive the car as modified—England deprived Victim of the full value of that investment. While requiring a defendant to pay the costs of such expenditures may not be appropriate in every case, we cannot conclude that no reasonable person would take the view adopted by the district court given the factual circumstances of this case and the primary objective of restitution: to award an injured party full compensation for his actual losses. *See State v. Corbitt*, 2003 UT App 417, ¶ 15, 82 P.3d 211 ("The appropriate measure of the loss or damage to a victim is fact-sensitive and will vary based on the facts of a particular case."); *see also State v. Kennedy*, 528 N.W.2d 9, 12–13 (Wis. Ct. App. 1994) (affirming a restitution award based on amounts expended to restore a car that was stolen while the car was undergoing restoration).

¶22   It was error, however, for the district court to award the full purchase price of the car. The State ultimately urged the district court to award the car's fair market value as reflected by its purchase price of $2,500. That price was slightly higher than the 2014 Kelley Blue Book's valuation of a 1995 Eagle Talon in very good condition, and it was lower than the car's value (pre-modification) as estimated by Mechanic. The problem with the district court's award and the valuations offered by the State is that they fail to account for the uninstalled engine.

¶23   The Crime Victims Restitution Act allows a court to award damages for injuries "arising out of the facts or events constituting the defendant's criminal activities," and "includes the fair market value of property *taken*." Utah Code Ann. § 77-38a-102(6) (LexisNexis Supp. 2016) (emphasis added). At the time of the theft, the engine had been removed for rebuilding and had yet to be reinstalled. Thus, while England stole the Talon, which included the installed modifications, he did not steal the engine. But by awarding restitution for the full original

purchase price, which included the value of an engine, the district court effectively held England accountable for property he did not take. Under these circumstances, the district court exceeded its discretion. *See State v. Mast*, 2001 UT App 402, ¶ 18, 40 P.3d 1143 (concluding that a restitution order requiring defendant to pay for items she did not steal violated the plain language of the Restitution Act).[7]

CONCLUSION

¶24 Although England has not shown that the district court exceeded its discretion in rejecting his proposed fair market valuations of the car or in awarding restitution based on the cost of the car's installed modifications, we agree with England that the court exceeded its discretion in calculating restitution without accounting for the fact that the car had no engine at the time it was stolen. The engine should have been treated in the same way as the other uninstalled improvements that were not taken by England when he sold the car. It appears this could be accomplished by deducting from the award the value of the engine as of when Victim purchased the car, had it then been removed from the car and sold separately. Accordingly, we vacate the district court's restitution award and remand for a recalculation of an appropriate restitution award consistent with this decision.

———————

7. In reaching this conclusion, we note that the State presented no evidence of the engine's value, leaving the district court to base its determination "on the best information available," as instructed by the Utah Supreme Court. *See Laycock*, 2009 UT 53, ¶ 23. But while the district court may have been faced with incomplete evidence, it lacked the discretion to award restitution for property that England did not take.