**2021 UT App 125**

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
ALIVIA DAWN HUFFMAN,
Appellant.

Opinion
No. 20200207-CA
Filed November 18, 2021

Third District Court, West Jordan Department
The Honorable William K. Kendall
No. 171404464

Robert T. Denny, Attorney for Appellant

Sean D. Reyes and Karen A. Klucznik, Attorneys
for Appellee

JUDGE DAVID N. MORTENSEN authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER and RYAN D. TENNEY
concurred.

MORTENSEN, Judge:

¶1      Alivia Dawn Huffman and a pal broke through the ceiling of a motorhome via a fan vent and made themselves at home. Huffman pled guilty to criminal charges for damaging the motorhome and possessing methamphetamine. Although she acknowledged in her plea agreement that she would be responsible to pay restitution, she now resists paying the restitution sought, specifically, restitution for the replacement cost of other personal property in the motorhome that was considered damaged based on positive methamphetamine tests. The district court overruled her objections and entered a restitution judgment that included the replacement costs for damaged personal property. Huffman appeals, and we affirm.

BACKGROUND

¶2 Facing various charges after breaking into and hanging out in a motorhome, Huffman ultimately chose to plead guilty to criminal mischief and possession of a controlled substance, stating, "I damaged a motorhome trailer belonging to another person, causing $500–$1,500 in damage and was in possession of methamphetamine." And she acknowledged that she would be responsible for restitution "in whatever amount," even if it exceeded the amount stated in the plea agreement. However, when the State filed its motion for restitution, the request was more than Huffman thought she had agreed to.

¶3 In that motion, the State sought not only the $1,898 necessary to repair the motorhome but also an additional $947 for personal items contaminated with methamphetamine, including "a mattress, bedding, some pans, and a set of mixing bowls" (collectively, personal property). In support of its motion, the State pointed out that "Huffman's meth and drug paraphernalia were found in the [motorhome]," that she "tested positive for meth when [she was] arrested," and that afterward "the [motorhome] tested positive for meth and did not test negative again until [the personal property was] removed." This, the State argued, suggested that Huffman not only possessed but also used the drugs while in the motorhome and that such use could have foreseeably contaminated the personal property. But in resisting this analysis, Huffman asserted that although she admitted to damaging the motorhome and possessing methamphetamine, she did not admit to using the drugs in the motorhome and, further, that another person was in the motorhome with her and that person could have caused the damage by using drugs.

¶4 Nevertheless, the district court determined that, considering the situation's context, because Huffman (1) damaged more than just the outside of the motorhome, (2)

was inside the motorhome, and (3) admitted the drugs and paraphernalia in the motorhome belonged to her, she was "the proximate cause of" the damage to the motorhome and the damage to the personal property. Specifically, the court stated,

> All right. In reviewing the history of the case I've looked at the allegations in the Information indicating that the defendant was found inside the trailer. So she was actually inside the trailer, wasn't just some sort of damage to the outside. She admitted that . . . all the drugs and paraphernalia in the trailer belonged to her, . . . [and] admitted she broke in through the vent on top of the trailer. The trailer was damaged. She pleaded guilty to criminal mischief . . . and possession of a controlled substance . . . . In the plea form it indicates that she damaged a motorhome trailer belonging to another, causing damage and was in possession of methamphetamine.
>
> I find it a complete lack of credibility in the idea that she damaged the trailer, was in the trailer, admitted to being in possession of a controlled substance and using controlled substances and that somehow that damage doesn't include all of the damage that was done to the trailer including damage caused by the methamphetamine use. So I find that based upon the offenses to which [Huffman] pleaded guilty that she was the cause of the damage to the trailer, at least her and potentially another individual as well, but she was the one found inside the trailer when the police responded. And so I do find that she is the proximate cause of that damage . . . .

Accordingly, the district court granted the State's restitution request; but for reasons not completely clear, no order was entered.

¶5 Some months later, Huffman moved for a restitution review hearing, contending that she "did not admit responsibility for, was not convicted of, and did not agree to pay restitution" for damage to the personal property and, alternatively, that restitution needed to be based on fair market value and not on the purchase price for the replaced items. In contrast, the State argued that Huffman's admissions encompassed both drug possession *and drug use*, as well as all the damage to the motorhome and personal property. When Huffman reiterated that "she admitted only to possession" and not "to use of a controlled substance," the court confirmed that Huffman "did plead guilty to possession of a controlled substance which was inside the motor home and that possession or use of that controlled substance resulted in the damage to the motor home for which restitution is sought." Huffman disagreed that possession could result in damage and pointed out that another person was in the motorhome with her. But the court resisted the argument, stating that "she admitted that all the drugs and the paraphernalia in the trailer belonged to her" and that

> [i]n the probable cause statement it indicates that the items that were found were a burnt spoon with residue, burnt tissues, burnt tin foil and a bong and field testing positive methamphetamine inside the trailer. So there's more than just simple possession. There was not some methamphetamine just simply isolated in a baggy. There was any number of other issues indicating use as well inside the trailer.

And, once again, the court granted the State's restitution request, but this time it actually entered a restitution order. Huffman now appeals.

## ISSUES AND STANDARD OF REVIEW

¶6    Huffman raises two issues for our review. Initially, she contends that the district court erred in ordering any restitution for the damaged personal property. Alternatively, she contends that the district court erred in ordering restitution based on the purchase price for the replacement items. "We will not disturb a [district] court's restitution order unless it exceeds that prescribed by law or the [district] court otherwise abused its discretion. A [district] court will be deemed to have abused its discretion only if no reasonable person would take the view adopted by the [district] court." *State v. England*, 2017 UT App 170, ¶ 9, 405 P.3d 848 (cleaned up).

## ANALYSIS

### I. Award of Restitution

¶7    Huffman contends that the district "court erred by requiring [her] to pay restitution for criminal conduct for which she did not admit responsibility, was not convicted, and did not agree to pay restitution." She asserts that because she pled guilty only to possession of the drugs in the motorhome, the State could not prevail on its theory that the personal property was damaged because she used drugs in the motorhome. We reject Huffman's argument for two independent reasons. First, on reviewing the record we agree with the district court's assessment that substantial circumstantial evidence supported its determination that Huffman not only possessed the drugs but also used the drugs while in the motorhome. And, second, even if Huffman only possessed the drugs in a traditional sense—and

did not use them—we still affirm the restitution order because even that limited criminal action could have resulted in damage to the personal property.

¶8      A defendant must pay restitution after being "convicted of criminal activity that has resulted in pecuniary damages" or "for conduct for which the defendant has agreed to make restitution as part of a plea disposition." Utah Code Ann. § 77-38a-302(1) (LexisNexis 2017). "Conviction" includes "a plea of guilty"; "[c]riminal activities" includes "any . . . criminal conduct for which the defendant admits responsibility to the sentencing court with or without an admission of committing the criminal conduct"; and "[p]ecuniary damages" means "all demonstrable economic injury, . . . which a person could recover in a civil action arising out of the facts or events constituting the defendant's criminal activities and includes the fair market value of property taken, destroyed, broken, or otherwise harmed." *Id.* § 77-38a-102(1)(b), (2)(b), (6). When "determining restitution for an offense, the offense shall include any criminal conduct admitted by the defendant to the sentencing court or to which the defendant agrees to pay restitution." *Id.* § 77-38a-302(5)(a). In other words, a defendant who has pled guilty to particular criminal conduct may be held responsible for the resulting economic injury.

¶9      When determining whether "a criminal activity has *resulted* in pecuniary damages" a court must determine if the criminal activity proximately caused the pecuniary damages. *State v. Ogden*, 2018 UT 8, ¶ 48, 416 P.3d 1132 (emphasis added) (cleaned up). That is, a court must decide whether both "but-for causation [is] present" and whether "the harm [is a] foreseeable" result of that but-for cause. *State v. Oliver*, 2018 UT App 101, ¶ 21, 427 P.3d 495. And although a defendant may plead to a particular crime, a district court may act "within its broad discretion, after reviewing the evidence presented at the restitution hearing, in ordering restitution for any pecuniary

damages clearly resulting from" that crime. *State v. Hight*, 2008 UT App 118, ¶ 5, 182 P.3d 922. So a defendant, having pled guilty to criminal conduct, can be held responsible for *all* damages proximately caused by that conduct.

¶10 Regarding the basis for restitution here, we agree with the district court that "any number of other issues indicat[ed drug] use . . . inside the trailer." The district court, reviewing the information before it, acknowledged that Huffman did not just damage the motorhome from the outside, but that she was found inside the motorhome; it noted that Huffman pled guilty to "damag[ing] a motorhome trailer belonging to another, causing damage and was in possession of methamphetamine"; and it found

> a complete lack of credibility in the idea that [Huffman] damaged the trailer, was in the trailer, admitted to being in possession of a controlled substance and using controlled substances and that somehow that damage doesn't include all of the damage that was done to the trailer including damage caused by the methamphetamine use.

The district court thus determined that Huffman proximately caused the damage for which the State sought restitution. When the issue came before the court again, Huffman raised the same argument she now raises on appeal—that "simply possessing [methamphetamine] wouldn't necessarily cause damage to anything" and that "she admitted only to possession" but "did not admit to use." After hearing this argument, the district court pointed out that Huffman "admitted that all the drugs and the paraphernalia in the trailer belonged to her"; identified "the items that were found" as "a burnt spoon with residue, burnt tissues, burnt tin foil and a bong"; and noted positive methamphetamine tests. Based on this evidence, the court summarized its view that there was "more than just simple

possession. There was not some methamphetamine just simply isolated in a baggy. There was any number of other issues indicating use as well inside the trailer." When Huffman responded by asserting that "she admitted" that the drugs and paraphernalia found in the motorhome "belonged to her but [that] she did not admit using them in the trailer," the court rejected this assertion too, stating that it did not "find that argument particularly persuasive," and it granted the State's request for restitution.

¶11 We agree with the district court that the context surrounding Huffman's admission in her plea, her presence in the motorhome, her admission that she owned the drugs and the paraphernalia, the physical state of the drugs and paraphernalia found in the motorhome, and the particular type of personal property that was damaged (i.e., bowls and pans), all support a determination that Huffman possessed *and used* drugs inside the motorhome.

¶12 But even disregarding the district court's apparent view that Huffman used drugs, and taking Huffman's argument into account—namely, that the analysis should be entirely limited to her understanding of her plea that she "was in possession of [but did not use] methamphetamine"—still does not bar restitution in this case. No one disputes that Huffman was in the motorhome, and Huffman clearly admits in her plea that she had possession of methamphetamine at the relevant time. Further, "the [motorhome] tested positive for meth and did not test negative again until [the personal property was] removed."

¶13 Indeed, even barring any drug use, the damaged personal property, "a mattress, bedding, some pans, and a set of mixing bowls"—property undisputedly contaminated with methamphetamine based on the fact that the motorhome tested negative for methamphetamine only after the items were removed—could easily have made contact with the drugs in

such a way as to contaminate them. Huffman need not have used the drugs in her possession for that to occur. Huffman could have set the drugs down on any of the items or all of them at various points. She could have held the drugs and then touched something with the hand that touched the drugs. She could have kept the drugs in a back pocket and sat on or rubbed up against the items. She could have dropped the drugs, spilled the drugs, or kept them in a faulty container. In short, any number of things could have transferred trace amounts of the drugs in Huffman's possession to the personal property, damaging it in the process.

¶14　Accordingly, the district court was well within its discretion to determine that the methamphetamine possession proximately caused the damage to the personal property and that, as a result, restitution was warranted. *See State v. Topanotes*, 2003 UT 30, ¶ 9, 76 P.3d 1159 ("It is well settled that an appellate court may affirm the judgment appealed from if it is sustainable on any legal ground or theory apparent on the record, even though such ground or theory differs from that stated by the [district] court to be the basis of its ruling or action, and this is true even though such ground or theory is not urged or argued on appeal by appellee, was not raised in the lower court, and was not considered or passed on by the lower court." (cleaned up)).

## II. Amount of Award

¶15　In the alternative, Huffman contends that, even if restitution is appropriate, the district "court erred in requiring Huffman to pay restitution for brand new replacement items . . . because the State failed to present evidence of market value." Specifically, Huffman asserts that the value of restitution must be based on fair market value, and because the State did not present evidence of fair market value, the district court could not appropriately determine the value of restitution.

¶16    Victims are "limited to recovering only pecuniary damages," which "are calculated based on the fair market value of property taken, destroyed, broken, or otherwise harmed"; and "fair market value is measured by what the owner of the property could expect to receive, and the amount a willing buyer would pay to the true owner for the . . . item." *State v. Ludlow*, 2015 UT App 146, ¶ 6, 353 P.3d 179 (cleaned up). However, in the absence of a market for the item, "the measure of damages is flexible" to allow "courts to fashion an equitable award to the victim," *see id.* (cleaned up); accordingly "[t]he appropriate measure of the loss or damage to a victim is fact-sensitive and will vary based on the facts of a particular case," *State v. Corbitt*, 2003 UT App 417, ¶ 15, 82 P.3d 211. Indeed,

> [w]hile restitution should be based on fair market value, there are circumstances where the large gap between the amount a willing buyer would pay and the amount a willing seller would accept is such that the court cannot accurately calculate fair market value while still fashioning an equitable award for the victim.

*Ludlow*, 2015 UT App 146, ¶ 9. And, where circumstances prevent the court from "accurately calculat[ing] fair market value while still fashioning an equitable award for the victim," *see id.*, such as where "there is little or no market" for the property, *see id.* ¶ 8, "other measures may more accurately serve the statutory purpose of compensating a crime victim for the full amount of . . . loss," *State v. England*, 2017 UT App 170, ¶ 14, 405 P.3d 848. "Thus, in some cases, a purchase price may be appropriate to a determination of loss." *Ludlow*, 2015 UT App 146, ¶ 6 (cleaned up).

¶17    In *State v. Ludlow*, this court offered an example of a situation that would warrant purchase-price valuation when the court stated that "the amount a willing buyer would pay for . . .

stolen shirts and pants may not have been an equitable calculation of those items' value." *See id.* ¶ 8; *see also id.* ¶¶ 8, 10, 13 (noting that clothing would be a good candidate for purchase-price valuation but reversing the restitution order because the district court used an improper valuation method for other items). Specifically, the court stated that

> the victim in this case may have been unable to sell her clothing items for more than a nominal amount, but it is unlikely that she would have ever considered doing so when the items were still of value to her. Thus, the amount a willing buyer would pay for the victim's stolen shirts and pants may not have been an equitable calculation of those items' value.

*Id.* ¶ 8. The court then highlighted other courts that have noted that because "items of personal clothing depreciate drastically almost as soon as they are worn[,] . . . it would be appropriate to award the victim the purchase price of [the] loss," *see id.* (cleaned up) (quoting with approval *State v. Ellis*, 838 P.2d 1310, 1312 (Ariz. Ct. App. 1992)), and that a court need not "estimate[] the value of small household appliances based on 'what the items might fetch at a yard sale' and . . . that 'a victim of a home invasion should not have to visit local thrift stores or pore through the classifieds to determine the value of a used blender,'" *see id.* (cleaned up) (quoting with approval *State v. Tetrault*, 2012 VT 51, ¶ 13, 54 A.3d 146). We conclude that such reasoning applies here.

¶18 The district court determined that Huffman "damaged the trailer, was in the trailer, [and] admitted to being in possession of a controlled substance," and accordingly, the "damage . . . include[d] all of the damage that was done." In other words, Huffman was "the proximate cause of that damage" done to the motorhome as well as the personal

property. The methamphetamine-contaminated personal property at hand consisted of "a mattress, bedding, some pans, and a set of mixing bowls." The mattress and bedding readily appear as items that are so personal to the user that little to no resale market exists because the gap between the value to the original owner and the amount (if anything) a buyer would pay is so different. *See id.* And, the used pans and mixing bowls represent the epitome of personal property for which the victim would have to visit a thrift store or yard sale to determine what, if any, value the items held in a resale market—a process so laborious that it inherently demonstrates the existence of such a gap. *See id.* Thus, replacement cost for these items constituted an appropriate method for measuring the amount of the restitution award in this case.

¶19 To support the amount of replacement costs for the personal property, the State provided receipts demonstrating the purchase price for replacement items. *See State v. Phillips*, 253 P.3d 372, 377 (Kan. Ct. App. 2011) (providing that in ascertaining the amount for a restitution award, the court may consider the "replacement cost of the property so long as the valuation is based on reliable evidence which yields a defensible restitution figure" (cleaned up)); *cf. State v. Becker*, 2018 UT App 81, ¶ 15, 427 P.3d 306 (reversing an order of restitution where the state did not provide "receipts" or other competent evidence to support the restitution request). And the court explicitly based its award on the amounts found on these receipts. Accordingly, we hold that the district court did not abuse its discretion in awarding restitution based on the replacement cost for the damaged personal property as determined by the receipts the State provided.

CONCLUSION

¶20 Because we agree that the circumstantial evidence supports a determination that Huffman used the drugs in the

motorhome, because we are persuaded that possession alone could have caused the damage for which the State sought restitution, and because, in this case, the price of purchasing replacement items constitutes an appropriate restitution calculation method in the absence of an available fair market value, we determine that the district court did not abuse its discretion. Accordingly, we affirm.

———————