**2017 UT App 151**

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
JOSEPH D. TRUJILLO,
Appellant.

Opinion
No. 20150779-CA
Filed August 17, 2017

Third District Court, Salt Lake Department
The Honorable Katie Bernards-Goodman
No. 151907205

Nathalie S. Skibine and Andrea J. Garland, Attorneys
for Appellant

Sean D. Reyes, Laura B. Dupaix, and Thomas B.
Brunker, Attorneys for Appellee

JUDGE GREGORY K. ORME authored this Opinion, in which JUDGES
J. FREDERIC VOROS JR. and MICHELE M. CHRISTIANSEN concurred.[1]

ORME, Judge:

¶1    Defendant Joseph D. Trujillo appeals the district court's
order requiring him to pay $2,500 in restitution. We reverse.

¶2    Trujillo pled guilty to the charge of failure to comply with
an officer's signal to stop, a third degree felony. *See* Utah Code
Ann. § 41-6a-210(1) (LexisNexis 2010). The district court accepted
Trujillo's plea based on the following truncated factual account:

---

1. Judge J. Frederic Voros Jr. participated in this case as a
member of the Utah Court of Appeals. He retired from the court
before this decision issued.

"Mr. Trujillo was driving & ignored [an officer's] lights signaling for Mr. Trujillo to pull over, although he saw them."

¶3     A presentence investigation report (the PSI) was completed, and the portion reserved for the victim impact statement and restitution recited, "There are no victims or restitution owed[.]" Nonetheless, at the sentencing hearing, the State requested that Trujillo pay $2,500 in restitution—a sum that the prosecutor acknowledged was "ridiculous." The State claimed that $2,500 in restitution was needed to compensate the owner of the stolen vehicle that Trujillo was driving when he failed to stop. The car was, apparently, abandoned and impounded at some point in time after Trujillo failed to stop,[2] although Trujillo was not convicted of abandonment of the vehicle. *See* Utah Code Ann. § 41-6a-1408 (LexisNexis Supp. 2016). The State claimed that the owner could not afford to pay the impound fees, which had climbed to $2,500.[3] No supporting evidence was submitted, and the State did not even indicate what evidence it had to support these claims. Trujillo, unprepared to meet the restitution claim given the lack of prior notice and the affirmative characterization to the contrary in the PSI, countered that restitution was inappropriate because he was

---

2. The record does not disclose whether this was minutes, hours, or days after Trujillo evaded the pursuing police, although there is an unexplained reference in the PSI to abandonment occurring "shortly" after the pursuit.

3. The prosecutor mentioned that the impound lot operator would accept $700 if it could be paid "now" but expressed doubt that Trujillo could come up with $700 immediately. Trujillo addressed the court and generally complained that the restitution amount sought by the State was high, but he did not dispel the prosecutor's assumption that he could not pay $700 "now."

not convicted of vehicle theft and because he borrowed the vehicle from his niece in good faith. And he insisted that if restitution were ordered, $2,500 would be an excessive amount because the car in question was a forty-year-old Chevrolet, the implication being that the car was worth less than the impound fee.[4]

¶4 After hearing the State's request and Trujillo's rebuttal, the district court sentenced Trujillo to 365 days in jail with credit for time served and, without explanation, ordered him to pay $2,500 in restitution. Trujillo timely appealed.

¶5 Trujillo challenges the district court's restitution order, claiming that it was error to "award[] restitution for conduct Mr. Trujillo never admitted based on the prosecutor's unsupported assertions."

> Under usual circumstances, [a]n appellate court will not disturb a trial court's restitution order unless it exceeds that prescribed by law or [the court] otherwise abused its discretion. However, [t]he proper interpretation of a statute is a question of law. Therefore, when reviewing an order . . . involving the interpretation of a statute, we accord no deference to the legal conclusions of the district court but review them for correctness.

*State v. Mast*, 2001 UT App 402, ¶ 7, 40 P.3d 1143 (first and third alterations and omission in original) (citations and internal quotation marks omitted).

¶6 Restitution is warranted "[w]hen a defendant is convicted of criminal activity that has resulted in pecuniary damages[.]"

---

4. At the sentencing hearing, the court asked what the value of the car was. The prosecutor responded that she did not know.

Utah Code Ann. § 77-38a-302(1) (LexisNexis Supp. 2016). For purposes of the restitution statute, criminal activity includes "(a) any offense of which the defendant is convicted; or (b) any other criminal conduct for which the defendant admits responsibility to the sentencing court with or without an admission of committing the criminal conduct." *Id.* § 77-38a-102(2). *See State v. Bickley*, 2002 UT App 342, ¶ 9, 60 P.3d 582 ("[A] defendant cannot be ordered to pay restitution for criminal activities for which the defendant did not admit responsibility, was not convicted, or did not agree to pay restitution."). Of key importance in this case, the pecuniary damages that trigger restitution are any "amounts proximately caused by defendant's [criminal] conduct." *Mast*, 2001 UT App 402, ¶ 24 (reversing the district court's grant of restitution for property that was taken in a robbery and not returned to the victim when the defendant was only convicted of receiving stolen items and all of the stolen property she possessed had been returned to the victim).

¶7      It is the State's burden to "prove that the victim has suffered economic injury and that the injury arose out of the defendant's criminal activities." *State v. Brown*, 2009 UT App 285, ¶ 10, 221 P.3d 273. In evaluating causation, Utah courts employ a "modified 'but for' test," the elements of which are that "(1) the damages 'would not have occurred but for the conduct underlying the . . . [defendant's] conviction' and (2) the 'causal nexus between the [criminal] conduct and the loss . . . is not too attenuated (either factually or temporally).'" *Id.* ¶ 11 (alterations and omissions in original) (additional internal quotation marks omitted) (quoting *State v. McBride*, 940 P.2d 539, 544 n.5 (Utah Ct. App. 1997)). Pecuniary damages do not arise from criminal activities if the court must make inferences about the defendant's thought processes or behavior in order to connect the damages to the defendant. *See Mast*, 2001 UT App 402, ¶¶ 17–18. *See also State v. Larsen*, 2009 UT App 293, ¶ 9, 221 P.3d 277 ("One can only conclude that Defendant admitted to stealing *this* vehicle through inference, which *Mast* prohibits. Because Defendant has

not admitted to theft, he cannot be ordered to pay restitution on the damages resulting from the theft itself.") (emphasis in original); *State v. Watson*, 1999 UT App 273, ¶ 5, 987 P.2d 1289 ("Without making inferences as the trial court did, it cannot be said that [the defendant] admitted responsibility for the murder nor did she agree to pay restitution. [She] only admitted and pleaded guilty to the obstruction of justice charge for which there were no pecuniary damages.").

¶8     Here, the district court erred in ordering Trujillo to pay restitution because he did not plead guilty to theft or abandonment and, given the lack of evidence presented in this case, no reasonable person could conclude that Trujillo's fleeing the police caused the owner to incur impound fees. During the sentencing hearing, the State said it was requesting restitution because "[Trujillo] was in a stolen car." On appeal, the State recognizes the need to recharacterize that theory and claims that "[r]egardless of whether Defendant stole the car, the car would not have been impounded were it not for Defendant's failure to stop and subsequent abandonment of the vehicle." But Trujillo was not convicted of, nor did he confess to or otherwise take responsibility for, theft or abandonment of the vehicle. *See* Utah Code Ann. § 76-6-404 (LexisNexis 2012), *id.* § 41-6a-1408 (Supp. 2016). On the contrary, he insisted during the sentencing hearing that he had borrowed the vehicle from his niece.[5]

---

5. The State's abandonment theory becomes more plausible if it is not referring to the infraction of abandoning a vehicle in a technical sense, which requires, among other things, that the vehicle be unattended for at least forty-eight hours on a highway or seven days on public or private property, *see* Utah Code Ann. § 41-6a-1408 (LexisNexis Supp. 2016), but merely the act of leaving the vehicle unattended under circumstances that led to its impoundment, *see id.* §§ 41-6a-1404(1), -1405(1)–(2), -1406(1). For instance, it is at least plausible that Trujillo left the vehicle

(continued…)

¶9 Likewise, the State has not demonstrated that the owner's damages arose out of the criminal activity to which Trujillo pled guilty—failure to respond to an officer's signal to stop. To be sure, one can readily envision damages arising directly from such a failure to stop, given the high speed and dangerous driving typical of drivers bent on evading police. Damage to pursuing police vehicles, street signs, parked cars, and garbage bins come to mind. But damages resulting from the later impoundment of a vehicle previously involved in evading police, such as the impoundment fees at issue in this case, are qualitatively different from the kind of damages typically resulting from a police chase.

¶10 Impoundment following abandonment in the technical sense, *see supra* note 5, requires that the vehicle was left unattended for a period of time, which means Trujillo would have had to have evaded police, gotten out of the car, and left it for at least forty-eight hours on a street or seven days off-street before its status as abandoned was discovered and it was impounded. *See* Utah Code Ann. § 41-6a-1408. But the State has presented no such evidence. And the Department of Corrections—whose job it is to identify victims and unearth any possible pecuniary damages, *see id.* § 77-38a-203(1)(a)

---

(…continued)
and continued to flee on foot and that, when he successfully evaded police as a pedestrian, they were immediately confronted with the need to deal with the vehicle and, rather than contacting the owner to come and get it, they chose to have it impounded. But there is no evidence in the record to support such a theory. On the record before us, it is also possible that Trujillo successfully made his getaway while in possession of the vehicle, which he thereafter returned to his niece, with any abandonment occurring later, as a result of the actions of someone else.

(LexisNexis Supp. 2016)—apparently found no evidence of a nexus between Trujillo's failure to stop and the owner's impound fees. The PSI prepared by Adult Probation and Parole noted that there were "no victims or restitution owed." Thus, it appears that the only thing suggesting a causal connection between the criminal activity to which Trujillo pled guilty and the owner's impound fees is inference, at best, and possibly mere speculation. *See Larsen*, 2009 UT App 293, ¶ 9.

¶11 Because Trujillo pled guilty only to failure to respond to an officer's signal, not to theft or abandonment, and because the State has failed to present any evidence demonstrating that the failure to stop caused the pecuniary damages that the vehicle's owner sustained, Trujillo cannot properly be ordered to pay restitution for the impound fees.

¶12 Reversed.

———————