2018 UT App 81

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
DARRON LAVEN BECKER,
Appellant.

Opinion
No. 20131151-CA
Filed May 3, 2018

Third District Court, Salt Lake Department
The Honorable Ann Boyden
No. 131902981

Debra M. Nelson and Lacey C. Singleton, Attorneys
for Appellant

Sean D. Reyes and Tera J. Peterson, Attorneys
for Appellee

JUDGE KATE A. TOOMEY authored this Opinion, in which JUDGES
GREGORY K. ORME and MICHELE M. CHRISTIANSEN concurred.

TOOMEY, Judge:

¶1 Darron Laven Becker was charged with third-degree aggravated assault after attacking Victim with a shovel. Following plea negotiations, Becker pleaded guilty to the reduced charge of attempted aggravated assault, a class A misdemeanor. The district court agreed to hold Becker's plea in abeyance for two years provided he complied with the conditions that he attend an anger management class and pay restitution. Becker now challenges the order of restitution, contending the record evidence did not "clearly establish a causal connection between [his] admitted criminal conduct and

[Victim's] alleged damages."[1] We conclude the State did not carry its burden to prove that Becker's conduct, for which he agreed to pay restitution, resulted in Victim's alleged damages. We therefore reverse the order of restitution and remand to the district court for further proceedings consistent with this opinion.

¶2 One evening, Becker saw Victim walking his unleashed dogs through Becker's neighborhood. Enraged, Becker stormed out of his house, grabbed a shovel, and began swinging the shovel at the dogs while yelling obscenities at Victim. Victim apologized and attempted to avoid a confrontation by crossing the street. But Becker did not abate and twice swung his shovel at Victim, first striking him in the throat and then on the head. Witnesses saw Becker pin Victim against a fence and heard

---

1. Becker appealed the order of restitution to this court in 2014, which we dismissed for lack of jurisdiction after determining that the order of restitution was a condition of a plea in abeyance agreement and therefore was not a final appealable order. *See State v. Becker*, 2015 UT App 304, ¶¶ 9, 12, 365 P.3d 173, *rev'd sub nom. State v. Mooers*, 2017 UT 36. Our supreme court consolidated *Becker* with a second case, *State v. Mooers*, 2015 UT App 266, 362 P.3d 282, and reversed our decisions that we lacked jurisdiction in each case, concluding that the district court's restitution orders were for "complete restitution," which were final, appealable orders. *Mooers*, 2017 UT 36, ¶¶ 17, 24. The cases were remanded to this court, and we now consider the merits of Becker's appeal. *See id.* ¶ 24.

Although Becker has since completed the conditions for his plea in abeyance, which resulted in the dismissal of the charges against him, we nevertheless address the merits of his appeal because he could recover the restitution he paid if he is successful on appeal. *See State v. Steed*, 2017 UT App 6, ¶¶ 16–18, 25, 391 P.3d 373 (concluding that because the defendants' convictions were reversed, the restitution order was void and the defendants were entitled to a reimbursement).

Becker scream that he was going to kill Victim. Victim sustained injuries to his neck and head, as well as a laceration across his left hand.

¶3     The district court accepted Becker's guilty plea and then the State filed a motion for restitution, requesting $663.01, and attached a "Restitution/Subrogation Notice" from the Utah Office for Victims of Crimes (the UOVC). This notice listed information about Becker and Victim; the date, location, and type of crime; and the payment the UOVC made to Victim within days of the aggravated assault. The UOVC paid Victim $663.01 for a "Medically Necessary Device." The UOVC also requested reimbursement for that payment. No other information was provided to support the payment made for such a device.

¶4     Becker objected to the State's motion for restitution and the court held a hearing. Because Victim was absent from the hearing, the State supported its restitution request with a handwritten note from Victim, which itemized "the economic losses he suffered from the assault: $39 for a vision exam, $624 for a pair of replacement eyeglasses, and $480 in lost wages." But the State did not present any evidence to show that Victim was wearing eyeglasses during the assault, nor did it present any receipts or documents from a physician with respect to the eye exam and Victim's purchase of eyeglasses. Becker argued that not only was this evidence insufficient to establish which medically necessary devices were paid for, but that it was also insufficient to establish a causal nexus between Victim's alleged damages and the conduct for which Becker agreed to pay restitution. The State responded that the payments were for the eyeglasses and vision exam, as provided in Victim's handwritten note.[2] But Becker "strenuously object[ed] to any order of

_____

2. Victim's handwritten note alleged the following expenses: $39 for an eye exam and $624 for eyeglasses, totaling $663. It is

(continued…)

restitution that . . . [was] based just on a handwritten piece of notebook paper," even if the UOVC paid reparations based on that evidence alone. He also complained that neither Victim nor a UOVC representative was present at the hearing to explain the basis for the payment.

¶5 The district court stated that Victim's handwritten note and the UOVC's documents did not "seem to be sufficient . . . to even determine whether [the reparations payment] is directly connected to . . . the criminal conduct of Mr. Becker." The court set a second restitution hearing to give the parties "some time to see if in fact [the reparations payment] is what it claims to be."

¶6 The parties did not produce additional evidence at the second restitution hearing. And neither Victim[3] nor a UOVC representative appeared to testify. Becker again objected to an order of restitution based on the UOVC's reparation payment, arguing that, even if the reparation payment to Victim was for a vision exam and eyeglasses, there was insufficient evidence to determine that his conduct resulted in "damages to [Victim's] eye or his eyeglasses" because the police reports and witness statements did not provide foundation for establishing these damages. Becker also argued that his due process rights were violated because he had "a right to cross-examine" both Victim and "whoever from [the UOVC] looked at this claim and made the determination and what exactly it was for and whether there is a proper basis for it."

¶7 The court concluded that Becker's due process rights were not violated because his right to confront witnesses was a "trial

---

(…continued)

unclear why the UOVC paid an additional $.01, but because we vacate the order, we need not reconcile the amounts.

3. The State subpoenaed Victim to testify at both restitution hearings, but he did not appear for either hearing.

right[]" that he waived when he pleaded guilty to a reduced crime. The court also determined there was "sufficient foundation and nexus" between Becker's conduct and Victim's damages and ordered restitution in the amount of $663.01.

¶8    Becker timely appealed, contending the record evidence did not "clearly establish a causal connection between [his] admitted criminal conduct and [Victim's] alleged damages" that would support an order of restitution.[4]

¶9    We "will not disturb a [district] court's restitution order unless it exceeds that prescribed by law or [the court] otherwise abused its discretion." *State v. Corbitt*, 2003 UT App 417, ¶ 6, 82 P.3d 211 (quotation simplified).

¶10   The Utah Code[5] provides that "[w]hen a person is convicted of criminal activity that has resulted in pecuniary damages, . . . the court shall order that the defendant make restitution to the victims, or for conduct for which the defendant has agreed to make restitution as part of a plea agreement."[6]

---

4. Becker also contends his due process rights were violated when he was denied a full restitution hearing. Because we vacate the order of restitution on other grounds, we need not address Becker's due process claims. *See State v. Johnson*, 2009 UT App 382, ¶ 18, 224 P.3d 720 (stating "courts should avoid reaching constitutional issues if the case can be decided on other grounds" (quotation simplified)).

5. The amendments made with respect to each of the statutes cited in this opinion are not substantive and do not affect the outcome of this appeal. We therefore refer to the most recent edition of the Utah Code. *See State v. Rackham*, 2016 UT App 167, ¶ 9 n.3, 381 P.3d 1161.

6. Before oral argument, the State filed a letter with supplemental authority. *See* Utah R. App. P. 24(j) (providing that a party may file a notice of supplemental authority after briefing

(continued…)

Utah Code Ann. § 76-3-201(4)(a) (LexisNexis 2017); *see also id.* § 77-38a-302 (restitution criteria). Pecuniary damages are "all demonstrable economic injur[ies], whether or not yet incurred . . . arising out of the facts or events constituting the defendant's criminal activities." *Id.* § 77-38a-102(6).

¶11      Here, Becker was charged with aggravated assault, a third degree felony, but as a result of plea negotiations he pleaded

_____

(…continued)

or oral argument but before a decision is issued). The State explained that neither party had cited or analyzed Utah Code section 76-3-201, which, in relevant part, requires a court to enter "an order of restitution for restitution payable to the [UOVC] in the same amount" that the UOVC made in reparations to the victim of the criminal offense. Utah Code Ann. § 76-3-201(4)(c) (LexisNexis 2017). Though this is correct, the next subsection of that statute provides that a court must consider criteria under Utah Code section 77-38a-302(5)(c) to determine whether the amount of restitution should be reduced from the amount of reparations paid by the UOVC or if the defendant should be exempted from restitution. *Id.* § 76-3-201(4)(d). The criteria under section 77-38a-302(5)(c) relate only to court-ordered restitution. *Id.* § 77-38a-302(5)(c) (LexisNexis 2017). But the Utah Supreme Court reversed our previous determination in *State v. Becker*, 2015 UT App 304, 365 P.3d 173, that the ordered restitution was "court-ordered" and determined that what had been ordered was "complete restitution," *State v. Mooers*, 2017 UT 36, ¶¶ 17, 24. Although the district court specifically stated that it was ordering Becker to make restitution to the UOVC, we are bound by the Utah Supreme Court's decision that the order of restitution was for "complete restitution," and we therefore cannot consider the supplemental authority in our analysis. *See State v. Menzies*, 889 P.2d 393, 399 n.3 (Utah 1994) (providing that vertical stare decisis "compels a court to follow strictly the decisions rendered by a higher court"), *superseded in part by constitutional amendment*, Utah Const. art. I, § 12 (amended 1995).

guilty to the reduced charge of attempted aggravated assault. As part of the plea agreement he signed, Becker agreed to pay restitution to Victim, "including any restitution that may be owed on charges that are dismissed as part of [this] plea agreement."[7] At the plea hearing, Becker's counsel repeatedly confirmed that Becker was willing to pay restitution as a condition of his plea in abeyance:

> The Court: . . . [I]t is clear that restitution will be paid.
>
> [Defense Counsel]: Yes.
>
> The Court: The amount has not been agreed upon.
>
> [Defense Counsel]: Right.
>
> The Court: . . . [I]f everyone understands the payment of restitution as ordered by this court ultimately, based upon the motion hearings or motions that we get from the State on this, will be one of the conditions, and . . . the plea in abeyance will not be fully resolved, and the case will not be dismissed, unless that restitution is paid according to the order of the court.

---

7. To the extent Becker asserts that proximate cause cannot be established between his conduct and damages to Victim's eyeglasses because he pleaded guilty to *attempted* aggravated assault, rather than aggravated assault, this argument is specious. As a result of the agreement, Becker agreed to pay restitution for damages that arose out of his actual conduct, which involved hitting Victim over the head with a shovel and pinning him to a fence, and not only the conduct for which he pleaded guilty. If "attempt" were taken literally in this situation, then Victim could have no damages and Becker's promise to pay restitution as part of the plea agreement would be illusory.

[Defense Counsel]: That's correct.

The Court: Even if Mr. Becker ultimately disagrees with what that is, it does not change the plea in abeyance conditions—

[Defense Counsel]: That's correct.

¶12 Although Becker agreed to pay restitution for the aggravated assault, the State was nevertheless required to prove "that the victim has suffered economic injury and that the injury arose out of the defendant's criminal activities." *See State v. Brown*, 2009 UT App 285, ¶ 10, 221 P.3d 273, *overruled on other grounds by State v. Ogden*, 2018 UT 8. The State has not met that burden here.

¶13 The Utah Supreme Court recently established that the proximate cause test is the proper test for determining whether a defendant's criminal activity resulted in the economic injury suffered by a victim for purposes of restitution.[8] *Ogden*, 2018 UT 8, ¶ 48. "Proximate cause is that cause which, in a natural and continuous sequence, unbroken by any new cause, produced the injury, and without which the injury would not have occurred." *Dee v. Johnson*, 2012 UT App 237, ¶ 4, 286 P.3d 22 (quotation simplified); *see also Raab v. Utah Ry. Co.*, 2009 UT 61, ¶ 22, 221 P.3d 219 ("'In its most common usage, the term 'proximate cause' is equivalent to 'legal cause' and is usually juxtaposed against the term 'cause in fact.'" (citation omitted)). "[F]oreseeability is an element of proximate cause." *Steffenson v. Smith's Management Corp.*, 862 P.2d 1342, 1346 (Utah 1993). "Therefore, the more fundamental test is whether under the

---

8. In deciding that proximate cause is the appropriate test for determining whether a defendant should pay restitution, the Utah Supreme Court "necessarily overrule[d] the body of court of appeals precedent applying a 'modified but for' test." *State v. Ogden*, 2018 UT 8, ¶ 48 n.12.

particular circumstances the defendant should have foreseen that his conduct would have exposed others to an unreasonable risk of harm." *Dee*, 2012 UT App 237, ¶ 5 (quoting *Watters v. Querry*, 588 P.2d 702, 704 (Utah 1978)) (quotation simplified).

¶14 Although the UOVC paid reparations to Victim, the State must still satisfy the proximate cause test. *Brown*, 2009 UT App 285, ¶ 12 n.10 (rejecting "the State's argument that it was excused from establishing the causal connection between the crime and the restitution amount because the Office of Crime Victims Reparations had reimbursed" the victim).

¶15 Because the rules of evidence do not apply to restitution proceedings, the State may present hearsay or other inadmissible evidence to meet this burden. *State v. Weeks*, 2002 UT 98, ¶ 16, 61 P.3d 1000. But the evidence presented here did not establish that Becker's aggravated assault caused damage to Victim's eyes or eyeglasses. The only evidence presented by the State was Victim's handwritten note and documents from the UOVC with an itemization of payments for a "Medically Necessary Device." Victim's handwritten note was a bare itemized list of expenses, and he did not provide receipts, insurance, or provider information related to his eyeglasses and eye exam, or any information relating the listed items to the aggravated assault. Thus, there was no information provided to the court to demonstrate that Becker's conduct "produced the injury, and without which the injury would not have occurred," s*ee Dee*, 2012 UT App 237, ¶ 4, and therefore did not meet the standards for restitution.

¶16 On the other hand, Becker sufficiently rebutted the State's request for restitution for the eye exam and eyeglasses by highlighting the fact that nothing in the police report suggested that Victim suffered damages to his eyeglasses and that none of the witness statements, including Victim's, even mentioned eyeglasses. Rather, the investigating officer reported that Victim suffered injuries to "the top of his head, scratches and marks on his neck and a laceration on his hand."

¶17 We conclude that the State failed to establish that the conduct for which Becker agreed to pay restitution caused[9] Victim's alleged damages and therefore need not determine whether the damage was foreseeable. *See id.* ¶¶ 4–5. The State had two opportunities to provide evidence sufficient to establish causation, and it was unable to do so. Because restitution may be awarded "only in cases where liability is clear as a matter of law and where the commission of the crime clearly establishes causality of the injury or damages," *State v. Poulsen*, 2012 UT App 292, ¶ 11, 288 P.3d 601 (quotation simplified), *overruled on other grounds by State v. Ogden*, 2018 UT 8, we reverse the order of restitution and remand to the district court to reimburse Becker for the restitution he paid under protest to the UOVC.

————————

9. Although courts applied the "modified but for" test at the time of Becker's restitution hearing, our conclusion that the State failed to carry its burden of proving Becker's conduct resulted in Victim's damages would have been the same under either test and we therefore reverse the order of restitution without remanding to the district court to apply the proximate cause test. In *Ogden*, the Utah Supreme Court implicitly agreed with the defendant that the "modified but for test" is "something less than proximate causation." *See Ogden*, 2018 UT 8, ¶¶ 24, 29 (reviewing whether the defendant was correct in arguing that "something less than proximate cause[]" was used to "establish that [the defendant] caused [the victim's] damages" and determining that "the district court employed something other than proximate cause"). Even under the less rigid "modified but for" test, the State could not demonstrate that the need for an eye exam and replacement eyeglasses "would not have occurred but for [Becker's] conduct," because there was no information provided to the court to demonstrate a causal connection between the conduct for which Becker agreed to pay restitution and Victim's alleged damages. *See State v. Brown*, 2009 UT App 285, ¶ 11, 221 P.3d 273, *overruled by Ogden*, 2018 UT 8.