2019 UT App 51

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
CHAD EVERETT MORRISON,
Appellant.

Opinion
No. 20170885-CA
Filed April 4, 2019

Third District Court, Salt Lake Department
The Honorable Paul B. Parker
No. 161910294

Dayna Moore, Attorney for Appellant

Simarjit S. Gill and Ann P. Boyle, Attorneys
for Appellee

JUDGE JILL M. POHLMAN authored this Opinion, in which
JUDGES GREGORY K. ORME and MICHELE M. CHRISTIANSEN
FORSTER concurred.

POHLMAN, Judge:

¶1　As part of a criminal sentence, a defendant may be ordered to make restitution for any pecuniary damages proximately caused by his crime. Chad Everett Morrison, after pleading guilty to assaulting his roommate (Roommate), was ordered to pay Roommate's moving expenses and lost wages. But Roommate was already planning on moving, and a private investigator testified that Roommate was let go from a temporary assignment a day after the assault due to a reduced workload. Morrison now appeals, contending that these facts demonstrate that the moving expenses and lost wages were not proximately caused by his crime. We affirm in part and reverse in part.

BACKGROUND

¶2    On September 29, 2016, Morrison pushed Roommate into a wall and punched him several times. In the altercation, a television was destroyed, and a dresser and a nightstand were damaged. The State charged Morrison with assault and criminal mischief.

¶3    Morrison pled guilty to assault, and in exchange the State dismissed the criminal mischief charge. Morrison stipulated, however, to paying restitution—which was thought to be no more than $500 based on the charging document—on the dismissed criminal mischief charge. After sentencing, the State filed a motion for restitution in the amount of $6,818.42. Morrison disputed that figure, and the district court scheduled an evidentiary hearing to determine the appropriate restitution amount.[1]

¶4    At the hearing, Roommate testified that he had "to move as a result" of the assault.[2] Expenses for the move included $35 for an application fee, $200 for a security deposit, $333.25 for the

---

1. Morrison initially failed to respond to the State's motion for restitution, and the district court ordered Morrison to pay the full amount requested by the State. The court later granted his motion to vacate the restitution order, and the matter was set for an evidentiary hearing.

2. Morrison makes no distinction between damages that were proximately caused by the assault as opposed to criminal mischief. Thus, we also make no distinction and, for simplicity, refer to the assault and the criminal mischief charges collectively as "assault," unless context suggests otherwise.

services of a professional moving company, and $70.28 for one month's increased rent.[3]

¶5 On cross-examination, Roommate conceded that he and his girlfriend (Girlfriend) "had planned to leave before [the assault] happened." According to his testimony, Roommate and Girlfriend "really wanted [their] own place" and had told Morrison that they "planned to move in the next couple of months." Because Girlfriend was pregnant, Roommate hired a professional moving company that "moved everything." When asked whether he tried to "rent a truck" in order to move himself, Roommate responded, "No. There was me and a pregnant female to move an entire apartment, so . . . ."

¶6 Roommate also testified that he "missed work" due to the assault. Roommate worked with a staffing agency and requested reimbursement for a total of ten days of lost wages, explaining that four days were used to "recover[] from the assault itself" and the "six additional days" were for "moving, finding apartments and making sure [they] had a place to live come the first of the month."[4] Roommate testified that he was told by the staffing agency to take "as much time as [he] needed to get everything figured out." On cross-

---

3. Roommate paid $500 a month while living with Morrison. The first month's rent at his new apartment was $570.28.

4. The district court stated at the hearing that "most the wages, or the moving expenses are reasonable, and [it was] not struggling with those." The court did struggle, however, "with the six additional days" requested by Roommate. The prosecutor agreed that the six additional days were not allowed under the statute but argued that "even when [the] Defense filed their objection [to the restitution amount,] . . . they acknowledged that the four days was probably reasonable."

examination, Roommate testified that he had a temporary position through the staffing agency at a company (the Company). But Roommate also testified that he was "supposed to get hired on there" permanently and that "[b]ecause [he] was unable to show up for those four days," the Company "decided that [it was not] going to move forward with [his] contract."

¶7 The defense called a private investigator who testified that he spoke with the staffing agency and that Roommate's temporary position at the Company was terminated "early because of workload." The investigator testified that Roommate's temporary position "ended on September 30th of 2016 . . . because they ran out of work or they didn't need an extra person."

¶8 The district court entered findings of fact and conclusions of law. As for the moving costs, the court found that although Roommate and Girlfriend "were planning to move anyway," Morrison's assault "caused the victim and his girlfriend to move earlier than planned" and "that it is difficult and more expensive to be forced to relocate early rather than as planned." It then found the $35 application fee, the $200 security deposit, the $333.25 professional-movers expense, and the $70.28 increased-rent expense were reasonable. It calculated the total amount of moving expenses to be $638.53.

¶9 As for lost wages, the court found that there was some "indication [that Roommate] would have been able to work somewhere else even if the job was terminated" at the Company. The court also found that Roommate "testified that he was hired by the staffing agency and worked regularly and that he did not work for four days because of [Morrison's] actions." The court found that the cost of missing four days of work was $464. Adding all the damages together, and finding that Morrison was

able to pay, the court ordered complete and court-ordered restitution in the amount of $1,397.43.[5]

¶10 Morrison appeals.

ISSUE AND STANDARD OF REVIEW

¶11 Morrison contends that "neither the assault nor the dismissed criminal mischief charge was the proximate cause" of Roommate's move or termination from his temporary work assignment. He therefore asserts that the district court erred in awarding damages for Roommate's moving expenses and lost wages. An appellate court "will not disturb a district court's restitution determination unless the court exceeds the authority prescribed by law or abuses its discretion." *State v. Ogden*, 2018 UT 8, ¶ 25, 416 P.3d 1132 (cleaned up). We have discerned an abuse of discretion when the district court granted the victim "a windfall" by, for example, failing to limit restitution "to that amount which is necessary to compensate a victim for losses caused by the defendant." *State v. England*, 2017 UT App 170, ¶ 15, 405 P.3d 848 (cleaned up).

ANALYSIS

¶12 "When a defendant is convicted of criminal activity that has *resulted in* pecuniary damages, . . . the court shall order that the defendant make restitution" to the victims of his crime. Utah Code Ann. § 77-38a-302(1) (LexisNexis Supp. 2016) (emphasis added). Restitution comes in two forms: complete and court-ordered. *Id.* § 77-38a-302(2). Court-ordered restitution is

---

5. This amount included $150 for a broken television and $144.90 to replace Roommate's damaged nightstand. Morrison does not challenge those portions of the decision.

primarily concerned with what the defendant is able to pay, but complete restitution means the "restitution necessary to compensate a victim for all losses *caused by the defendant*." *Id.* § 77-38a-302(2), (5) (emphasis added). And the terms "resulted in" and "caused by the defendant" in section 77-38a-302 refer to proximate cause. *State v. Ogden*, 2018 UT 8, ¶¶ 32, 39, 416 P.3d 1132.

¶13 Proximate cause includes but-for causation (that is, factual causation), but it requires "some greater level of connection between the act and the injury than mere 'but for' causation." *Raab v. Utah Ry.*, 2009 UT 61, ¶ 23, 221 P.3d 219; *see also State v. Oliver*, 2018 UT App 101, ¶ 21, 427 P.3d 495. It also requires foreseeability; indeed, the general test for proximate cause "is whether under the particular circumstances the defendant should have foreseen that his conduct would have exposed others to an unreasonable risk of harm." *State v. Becker*, 2018 UT App 81, ¶ 13, 427 P.3d 306 (cleaned up). In restitution cases, the burden is on the State to prove proximate cause. *See id.* ¶ 12; *Oliver*, 2018 UT App 101, ¶ 22; *see also State v. Trujillo*, 2017 UT App 151, ¶ 7, 405 P.3d 745 ("It is the State's burden to prove that the victim has suffered economic injury and that the injury arose out of the defendant's criminal activities." (cleaned up)), *overruled on other grounds by State v. Ogden*, 2018 UT 8, 416 P.3d 1132.

¶14 Morrison contends that the State did not meet its burden to prove his actions were the proximate cause of either (1) Roommate's moving expenses or (2) Roommate's lost wages. We agree in part with the first contention but reject the second.

¶15 First, we conclude that although the evidence supports the district court's finding that Morrison's assault caused Roommate to move earlier than planned, the court erred in deciding that Morrison's assault proximately caused *all* of Roommate's moving expenses. As an initial matter, the district

court did not exceed its discretion in finding that Roommate and Girlfriend expedited their move by one month. According to Roommate's testimony, even before the assault he and Girlfriend were planning "to move in the next couple of months."

¶16   But even though the move was accelerated due to the assault, the pecuniary harm must be tied to the expedited nature of the move. The $35 application fee and $200 security deposit do not have any connection to the earlier-than-planned move. Roommate's own testimony provided that he and Girlfriend were "planning to move anyway." And there was no evidence connecting the need to pay an application fee or security deposit to Morrison's actions, or suggesting that Roommate would not have incurred those expenses had he moved a month later, as expected. Similarly, the $333.25 spent on professional movers is unconnected to the expedited moving date. The district court found that Roommate "had to hire assistance" because Girlfriend "was pregnant and unable to help in the move." But there was no evidence presented at the restitution hearing that, had Roommate moved as planned, he would not have hired the moving company in any event.

¶17   Had the State presented evidence that connected these expenses to the expedited nature of the move, we would likely reach a different result. But because there was no evidence tying these expenses to Roommate's need to move a month sooner than planned, there is no basis in the evidence to conclude that the expenses were proximately caused by the assault. Thus, the court speculated without a sufficient evidentiary basis that Roommate incurred the application fee, security deposit, and professional-movers expense as a result of Morrison's actions. *See State v. Cristobal*, 2010 UT App 228, ¶ 16, 238 P.3d 1096 ("When the evidence supports more than one possible conclusion, none more likely than the other, the choice of one possibility over another can be no more than speculation . . . ."). Consequently, in awarding pecuniary damages for these

expenses, the district court granted Roommate "a windfall" and therefore exceeded its discretion. *See State v. England*, 2017 UT App 170, ¶ 15, 405 P.3d 848 (cleaned up); *see also State v. Brown*, 2009 UT App 285, ¶¶ 11–12, 221 P.3d 273 (reversing a restitution award for moving expenses when there was no evidence of a causal connection between the defendant's crime and the victim's relocation), *overruled on other grounds by State v. Ogden*, 2018 UT 8, 416 P.3d 1132.

¶18 The court, however, properly awarded pecuniary damages of $70.28 for one month's increased rent. As the district court recognized, Roommate's request for only one month's additional rent was an "acknowledgment that [Roommate and Girlfriend] would have moved in a month." But unlike the other expenses, there was evidence to support the court's conclusion that this increased rent was proximately caused by the expedited nature of the move. While living with Morrison, Roommate paid $500 a month in rent. After the move, Roommate paid $570.28 for the first month's rent at Girlfriend's and his new apartment. Had Roommate and Girlfriend moved as planned one month later, Roommate might have saved the increased rent. And it was foreseeable that attacking Roommate, who was already considering moving, would prompt Roommate to expedite his move to a new apartment with potentially higher rent. *See Becker*, 2018 UT App 81, ¶ 13.

¶19 Second, we conclude that the district court did not exceed its discretion in determining that Morrison's assault proximately caused Roommate's lost wages for four days. Granted, there was limited evidence given by Roommate at the restitution hearing that he lost his job at the Company due to missing four days of work after the assault. And the private investigator hired by Morrison presented evidence impeaching Roommate's narrative. But the district court did not have to accept the impeachment evidence. "Credibility determinations are within the province of the [district court]" because a district court "is uniquely

equipped to make factual findings based exclusively on oral testimony due to [its] opportunity to view the witnesses firsthand, to assess their demeanor and to consider their testimonies in the context of the proceedings as a whole." *Kidd v. Kidd*, 2014 UT App 26, ¶ 34, 321 P.3d 200 (cleaned up); *see also* Utah R. Civ. P. 52(a)(4) (stating that a "reviewing court must give due regard to the trial court's opportunity to judge the credibility of the witnesses").

¶20    Roommate testified that he "missed work" due to his injuries from the assault and that he was told by the staffing agency to take "as much time as [he] needed to get everything figured out." He also testified that he was "supposed to get hired on" at the Company, but due to missing work—with the staffing agency's approval—the Company decided not "to move forward with [his] contract." And even if Roommate was terminated early from his temporary assignment with the Company due to "workload," Roommate testified that he was placed at the Company by a staffing agency. The district court used these facts to infer that Roommate "would have been able to work somewhere else even if the job [at the Company] was terminated." That was a reasonable inference based on Roommate's testimony.

¶21    Morrison challenges this conclusion, asserting that the district court incorrectly "shifted the burden" to him in finding that Roommate "would have been able to work somewhere else" when the State did not provide any specific evidence on this point. Not so. Roommate testified that he was placed by a staffing agency and "missed work," and the court inferred that the staffing agency, who had told Roommate to take the time he needed to recover, would have placed him somewhere else. If there were truly no work for Roommate, he would not have needed the staffing agency's blessing to take time off. Thus, the court did not shift the burden. It simply made a reasonable inference to find that the State had met its burden.

¶22 Further, the district court credited Roommate's testimony, but it did not blindly follow it. Roommate testified that he missed four days to "recover[] from the assault itself" and six additional days "making sure [he and Girlfriend] had a place to live." The court stated that it was "struggling with the six additional days" but found the four days used "to heal" was reasonable. It therefore limited its restitution order to the four days Roommate testified he missed because of Morrison's assault. Because the district court "is uniquely equipped to make factual findings based exclusively on oral testimony," it did not exceed its discretion in awarding Roommate his lost wages. *Kidd*, 2014 UT App 26, ¶ 34 (cleaned up).[6]

---

6. We also note that although there was limited evidence presented at the restitution hearing on this point, such paucity is at least partly attributable to Morrison. In his motion seeking to vacate the district court's original restitution order, Morrison conceded that "restitution is . . . appropriate for the four days [Roommate] was unable to work." The State contends that Morrison invited any error by making this concession. At the restitution hearing, however, Morrison argued that all of Roommate's lost wages were "too attenuated" and were "not appropriate." With this clarification, we conclude that Morrison did not "encourage[] the trial court to make an erroneous ruling," *see State v. McNeil*, 2016 UT 3, ¶ 17, 365 P.3d 699, because it would have been clear to the court after the hearing that Morrison was not stipulating to four days' worth of lost wages. But Morrison's initial concession, though not inviting the court to err, did lull the State into thinking that reimbursement for four days of lost wages was not going to be a point of contention or require much evidence. The State argued at the hearing that "even when [the] Defense filed their objection and asked to . . . set the hearing they acknowledged that the four days was probably reasonable." Thus, the limited evidence presented by

(continued…)

CONCLUSION

¶23 The district court did not err in awarding Roommate $70.28 for one month's increased rent and $464 for four days' lost wages. But we reverse the district court's award of restitution for a $35 housing application fee, a $200 security deposit, and a $333.25 professional-movers expense. Because Morrison does not challenge the restitution award of $150 for a broken television and $144.90 for a damaged nightstand, we remand to the district court to reduce the restitution order to $829.18, the amount that covers the pecuniary harm proximately caused by Morrison's crime.

_____

(…continued)
the State is understandable, and the district court did not exceed its discretion in drawing reasonable inferences from the evidence that was available.